IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL JOHN HAWTHORNE,

    Petitioner,                     2: 10 - cv - 1268 - MCE TJB

    vs.

MATTHEW CATE,

    Respondents.                 FINDINGS AND RECOMMENDATIONS

_____/

## I. INTRODUCTION

Petitioner, a state prisoner, proceeding with counsel has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a sentence of five years plus life imprisonment with the possibility of parole after being convicted by a jury of kidnapping for extortion, assault with a deadly weapon or instrument other than a firearm by means of force likely to produce great bodily injury, false imprisonment, assault with a stun gun or taser, making criminal threats and possession of methamphetamine for sale. Petitioner raises one claim in his federal habeas petition; specifically whether the trial court erred in failing to instruct the jury on simple kidnap, a lesser included offense of kidnap for extortion. For the following reasons, the habeas petition should be denied.

## II.  FACTUAL BACKGROUND[1]

*Prosecution's Case*

Christopher Luthin testified that after he was released from jail in March 2005, he rented a room from defendant in the latter's home in Brentwood, but moved out a month and a half later at defendant's request.  In November, Luthin was living part time in his van parked behind the home of a friend in Tracy.

Just before dawn on November 20, 2005, Luthin was awakened by defendant entering his van, pointing what appeared to be a pistol at him, and telling him that he was "under arrest" for having burglarized defendant's home in September.  Luthin agreed to go to the police station with defendant and left the van with him.

When they reached the front gate, Luthin became fearful that defendant was not intending to take him to the police station and fled.  As Luthin ran he was struck by a taser dart and fell.  Luthin and defendant struggled, with defendant trying to put duct tape on Luthin's face and to use zip ties to bind his arms.  During the struggle, defendant repeatedly shocked Luthin with the taser.

Defendant finally subdued Luthin and bound his wrists and ankles with zip ties.  Whenever Luthin called for help, defendant would kick him saying, "We could do this the hard way or we could this the easy way."  Defendant forced Luthin into defendant's pickup and drove to defendant's house, which took about 45 minutes, and parked in the garage.  When Luthin asked why they weren't going to the police station, defendant told him that the station didn't open until 10:00 a.m. and that he had to get some paperwork.  Noticing it was now 8:10 a.m., Luthin responded that defendant could get the paperwork later and he knew the police station didn't close.

Luthin escaped the pickup, but could not escape from the garage because the door was closed.  Defendant knocked Luthin down, beat him "pretty severely," and then tied him to the passenger wheel of the pickup.  Over the next few hours, defendant placed a towel over Luthin's head; put a bag next to Luthin's ear and told him there were rattlesnakes in it, which Luthin claimed he could hear rattling; put a rubber ball in Luthin's mouth to keep him from calling out; poured ether over the towel; threatened to kill Luthin and bury him in a trench where no one would ever find him.

Defendant started smoking methamphetamine and told Luthin, "I'm going to have to kill you . . . unless you give me your

---

[1] The factual background is taken from the California Court of Appeal, Third Appellate District opinion on direct appeal dated October 17, 2008 and filed in this court on September 7, 2010 by Respondent as Lodged Document 4 (hereinafter "Slip Op.").

2

Corvette." When Luthin agreed to do so, defendant freed him and the two drank beer and smoked methamphetamine "to seal the deal." Defendant drove Luthin back to Tracy and dropped him off near his trailer, telling him that he would call in a week about picking up the Corvette.

Luthin immediately called the police and Deputy Dexter Cho responded, arriving at Luthin's van about 12:30 p.m. Cho described Luthin as having bruises and scratches on his face and arms; his right eye was "bruised pretty good" he had ligature marks between his wrists and forearms; and tape residue on his face, around his mouth. Detectives searched the area where Luthin claimed he struggled with defendant and found evidence of a taser having been used, pieces of duct tape, and a bundle of zip ties.

The next day, while the detectives were again searching the area of the struggle, Luthin told Detective James Bojko that he had received a call from defendant and that defendant was coming to pick up the Corvette in a couple of hours. Defendant arrived driving a pickup with a flatbed trailer attached and was arrested. Inside defendant's residence detectives found methamphetamine totaling 30.2 grams. A zip gun and additional tasers were found in the pickup.

*Defense Case*

Defendant testified that after Luthin moved in with him, the police came to the house looking for Luthin and he warned Luthin that he didn't want the police coming by. A few weeks later, defendant read in a newspaper that a shotgun had been found in some shrubs in front of defendant's home near where Luthin frequently parked his van. Defendant told Luthin he had to move out, which Luthin did.

In September 2005, defendant's house was burglarized and several items stolen. Defendant's investigation led him to believe that Luthin was the culprit. Although defendant reported the burglary to the police, he did not believe they were acting quickly enough. Defendant found out where Luthin was living, drove there and looked in Luthin's van to see if any of defendant's property was there. Defendant saw his Sony laptop computer, retrieved it, and returned home to read up on how to effect a citizen's arrest.

In the early morning hours of November 20, 2005, defendant went to Luthin's van to make a citizen's arrest, taking with him duct tape, a taser, and zip ties to accomplish the task. Defendant entered the van and informed Luthin that he was making a citizen's arrest for the September burglary and not to do anything stupid. When defendant and Luthin got to defendant's pickup, Luthin took off running. Defendant shot Luthin with the taser, but was unable to shock him because only one prong hit him. Defendant tackled

3

> Luthin and the two exchanged punches, with defendant managing to get zip ties on Luthin's hands and walk him to defendant's pickup.
>
> Although defendant intended to take Luthin to the police station, he first drove home to get the computer and the paperwork concerning the burglary. Once in defendant's garage, Luthin again attempted to escape, causing another fight and defendant's tying Luthin to the wheels of his pickup.
>
> Defendant told Luthin he was going to go to jail and Luthin began crying and apologized for what he had done. Luthin begged defendant not to take him to jail and admitted he still had some of defendant's property in storage. Luthin offered to returned the property and give defendant his Corvette if defendant would just let him go. Defendant figured accepting the Corvette "was better than nothing." Defendant agreed to the deal, cut Luthin loose, and they smoked some of defendant's methamphetamine.
>
> After defendant drove Luthin back to Tracy, Luthin said that he would get a trailer and deliver the Corvette as well as the rest of defendant's property to him. When Luthin failed to do so, defendant obtained a trailer and drove to where defendant was staying. At that time the police arrested him.

(Slip Op. at p. 2-6.)

### III.  PROCEDURAL BACKGROUND

After being convicted and sentenced, Petitioner appealed to the California Court of Appeal. In his appeal, Petitioner raised the issue that he raises in this federal habeas petition. The California Court of Appeal affirmed the judgment. The California Supreme Court summarily denied Petitioner's petition for review on January 21, 2009.

Subsequently, Petitioner filed a state habeas petition in the Superior Court of California, County of San Joaquin in which he raised the issue that he raises in his federal habeas petition. That court denied the state habeas petition on September 24, 2009 and stated the following:

> Petitioner raises several challenges to his 2007 conviction. The conviction was appealed to the Third District Court of Appeal, which issued its decision on October 16, 2008. A review of the appellate opinion reveals that each of petitioner's current contentions was raised and rejected on direct appeal. The petition is therefore denied. [In re Waltreus (1965) 62 Cal.2d 218, 225, 42 Cal.Rptr. 9, 397 P.2d 1001.]

4

(Resp't's Lodged Doc. 6.)

Petitioner filed his federal habeas petition on May 21, 2010. Respondent answered the petition on January 21, 2011. Respondent filed a traverse on February 22, 2011.

## IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrande, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.

5

Rather, that application must also be unreasonable." Id. at 411.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

The first step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review."  See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  In this case, the last reasoned decision on Petitioner's sole claim was from the California Court of Appeal on direct appeal.

## V.  ANALYSIS OF PETITIONER'S CLAIM

Petitioner argues that the trial court erred in failing to instruct the jury on simple kidnap, a lesser included offense of kidnapping for extortion.  The California Court of Appeal stated the following in rejecting Petitioner's arguments:

> Defendant contends the trial court prejudicially erred by not instructing the jury, sua sponte, on kidnapping pursuant to section 207(a) [FN 3] as a lesser included offense within kidnapping under section 209(a).  [FN 4]  Defendant bases his argument on two preliminary propositions: First, that section 209(a) must be read, as is the case with section 209(b) which governs kidnapping to commit robbery or a specified sex offense, [FN 5] to require that the intent to commit ransom or extortion be present at the commencement of the kidnapping.  Second, that as charged herein, i.e., under the accusatory pleading test, kidnapping under section 207(a) is an included offense in kidnapping under section 209(a).
> [FN 3]  Section 207(a) provides:  "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping.
> [FN 4]  Section 209(a) provides in relevant part:  "Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another person by any means whatsoever

6

with intent to hold or detain, or who holds and detains, that person for ransom, reward or to commit extortion or to exact from another person any money or valuable thing . . . is guilty of a felony . . . ."
[FN 5]  Section 209(b)(1) provides: "Any person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy, or any violation of Section 264.1, 288, or 289, shall be punished by imprisonment in the state prison fro life with the possibility of parole.
[FN 6]  Count I charged defendant as follows: "on or about 11-20-05 the crime of KIDNAPPING FOR RANSOM, in violation of Section 209(a) of the Penal Code, a felony, was committed by [defendant], who . . . did willfully and unlawfully seize, . . . carry away CHRISTOPHER LUTHIN, with the intent to hold and detain, and who did hold and detain, said victim for ransom, reward, [or] extortion . . . ."

Defendant then argues that because "the evidence raised a question as to whether [he] kidnapped Luthin with the intent to commit extortion, or whether that intent did not arise until he began smoking methamphetamine in the garage several hours later [,] . . . the evidence cast a doubt on whether all the elements of the charged offense were present [citation], and the jury could have concluded that [he] was guilty of the lesser offense [citation]." Even accepting defendant's propositions, we are not persuaded by his argument.

The law regarding the court's duty to instruct on included offenses is clear: "California decisions have held for decades that even absent a request, and even over the parties' objections, the trial court must instruct on a lesser included offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser. [Citations.]" (People v. Birks (1998) 19 Cal.4th 108, 118.)

If the jury believed that defendant's forcible carrying away of Luthin was pursuant to his making a citizen's arrest and that his intent to extort money did not arise until he had Luthin in the garage, this would not have afforded an evidentiary basis for a finding of kidnapping under section 207(a). This is so because subdivision (f)(2) of section 207 states that section 207(a) is not applicable to "any person acting under Section 834 or 837," the latter section referring to the making of a citizen's arrest. Consequently, because the forcible carrying away of Luthin could not constitute criminal asportation defendant was not entitled to an instruction on section 207(a) kidnapping.

Defendant contends the trial court committed prejudicial error when it failed to instruct the jury, sua sponte, on the included offense of violation of section 207(a) because commission of that offense was a theory of defendant's case. We disagree.

7

> A "trial court is required to instruct on a defense . . . only if substantial evidence supports the defense. [Citations.]" (People v. Shelmire (2005) 130 Cal.App.4th 1044, 1054.) However, as shown in the previous section, there was insufficient evidence upon which to support a section 207(a) violation.

(Slip Op. at p. 6-9.)

Claims based on instructional error under state law are not cognizable on federal habeas review. See Estelle v. McGuire, 501 U.S. 62, 71-72 (1991). However, Petitioner does not only rely on state law in advancing his argument in this federal habeas petition. Petitioner also argues that his due process rights were violated by the trial court's failure to instruct the jury on the lesser included offense of kidnapping. To receive federal habeas relief for an error in jury instructions, Petitioner must show that the error so infected the entire trial that the resulting conviction violates due process. See Henderson v. Kibbe, 431 U.S. 145, 154 (1977). "Due process requires that criminal prosecutions 'comport with prevailing notions of fundamental fairness' and that 'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). Additionally, in order to obtain federal habeas relief on this claim, Petitioner "must show that the alleged instructional error had substantial and injurious effect or influence in determining the jury's verdict." Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009) (internal quotation marks and citations omitted), cert. denied, – U.S. –, 120 S.Ct. 2103, 176 L.Ed.2d 733 (2010). "A substantial and injurious effect means a reasonable probability that the jury would have arrived at a different verdict had the instruction been given." Id. (internal quotation marks and citation omitted). In determining whether petitioner was prejudiced by the failure to instruct the jury on simple kidnap, a court considers: (1) the weight of the evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge." Id. In this case, the burden on Petitioner is especially heavy where the alleged error involves the failure to give an instruction. See id. An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law. See Henderson, 431 U.S. at

8

155; see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

In a non-capital case, such as this one, the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas proceeding." Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984). In Beck v. Alabama, 447 U.S. 625, 638 (1980), the Supreme Court held that criminal defendants possess a constitutional right to have the jury instructed on a lesser included offense in a capital case. However, the Beck court expressly reserved the question of whether due process mandates the application fo the same right in non-capital cases. See id. at 638 n. 14. The right to have a jury instructed on a lesser included offense is not clearly established federal law in a non capital case and consequently, the failure of a state trial court to instruct on a lesser included offense does not present a federal constitutional question. See Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998).

In Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000), the Ninth Circuit stated that there may be an exception to this general rule for adequate jury instructions on a defendant's theory of defense. However, even if Petitioner does possess this right, Petitioner still would not be entitled to federal habeas relief on his claim. He failed to show that any purported instructional error had a substantial and injurious effect on the jury's verdict. As Petitioner stated in his traverse:

> The defense theory is simply that the Petitioner initiated the abduction with the sole intent of effecting a citizen's arrest because he was dissatisfied with the progress of the police in their investigation of Luthin's burglary of Petitioner's house. That was his declared intent. He had researched the law relating to citizen arrests. He initially made no demand of Luthin except that he accompany Petitioner to the police station. There is no direct evidence Petitioner initially had any specific intent to rob, extort or hold Luthin for ransom at the time he seized and transported him.

(Pet'r's Traverse at p. 6.)

The California Court of Appeal's decision analyzing Petitioner's sufficiency of the evidence argument (an issue not raised in his federal habeas petition) is instructive in illustrating why any purported error in failing to give the instruction would have been harmless; specifically

that court stated:

> Defendant contends the evidence is insufficient to support his section 209(a) finding. This is so, he argues, because there was "not one scintilla of evidence [ ] offered to show that [he] possessed the specific intent to commit extortion of Luthin at any time prior to the moment when, smoking methamphetamine . . . in his garage, he told Luthin he would not kill him if Luthin would give him the Corvette." We reject this contention.
>
> The argument is self-defeating. If defendant's intent to extort arose only as defendant hypothesizes, i.e., when the two were smoking methamphetamine in the garage, such a circumstance constitutes substantial evidence of a violation of section 209(a), which permits conviction where a defendant "holds or detains" a person for the purpose of committing extortion.

(Slip Op. at p. 11-12.)

This evidence strongly implicated Petitioner for liability under California Penal Code § 209(a) for the reasons discussed by the California Court of Appeal as stated above. Specifically, it established that Petitioner was guilty of section 209(a) because he held/detained the victim for purposes of extorting the Corvette. Any purported error in failing to instruct on a lesser simple kidnapping charge would not have had a substantial and injurious effect on the jury's verdict. Petitioner failed to show to a reasonable probability that the jury would have arrived at a different verdict had the simple kidnapping instruction been given. Therefore, for the foregoing reasons, Petitioner is not entitled to federal habeas relief.

## VI. CONCLUSION

Accordingly, IT IS RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

1 shall be served and filed within seven days after service of the objections.  The parties are
2 advised that failure to file objections within the specified time may waive the right to appeal the
3 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In any objections he
4 elects to file, Petitioner may address whether a certificate of appealability should issue in the
5 event he elects to file an appeal from the judgment in this case.  <u>See</u> Rule 11, Federal Rules
6 Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability
7 when it enters a final order adverse to the applicant).

8 DATED: May 16, 2011

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE